IN RE ADOPTION OF KATHERINE ELLEN ALLEY et al.

No. 46496.

JUNE 6, 1944.

Cook & Cook, of Glenwood, for appellant.

Genung & Genung, of Glenwood, for appellee.

GARFIELD, J.—  The question presented is whether the consent of a divorced father of minor children is required by section 10501.3, Code, 1939, before they can be adopted, where the mother, having their care and providing for their wants, gives her consent.

On June 11, 1942, petitioner married the mother of the six minor children whose adoption is sought. Since that date the children, issue of the wife's prior marriage with defendant, have lived with their mother and petitioner. Prior to her marriage with petitioner, the mother had procured a divorce from defendant. The decree awarded her "the absolute care, custody and control" of the children. No right of visitation nor other rights over the children were reserved to defendant. The petition in the divorce suit charged defendant with such cruel and inhuman treatment as to endanger the life of his wife, and alleged, "defendant is not a fit and proper person to have the custody and control" of the children. At the time of the divorce the mother,

in a separate proceeding, was appointed guardian of the person and property of the children and letters of guardianship issued to her. Since the divorce defendant has contributed nothing to the children's support.

On August 17, 1943, the stepfather filed this petition under chapter 473, Code, 1939. The father filed his answer alleging, among other matters, that the court was without jurisdiction because he had not consented to the adoption. A brief hearing was had at which the mother testified she consented to the adoption. Petitioner also testified. The petition, decree, and other files in the divorce suit were offered in evidence. No other evidence of any kind was offered. The trial court held it had no jurisdiction because defendant did not consent to the adoption and, on this ground, denied the petition.

The applicable part of Code section 10501.3 provides:

"The consent of both parents shall be given to such adoption unless * * * the parents are not married to each other * * * or unless one or both of the parents have been deprived of the custody of the child by judicial procedure because of unfitness to be its guardian. If not married to each other, the parent having the care and providing for the wants of the child may give consent."

Petitioner argues that defendant's consent is not necessary because these parents "are not married to each other," and also because defendant has been deprived of the custody of the children "by judicial procedure because of unfitness" to be their guardian; that, since the parents are not married to each other, it is necessary to have the consent only of the mother, who has the care and provides for the wants of the children. We find it unnecessary to decide whether defendant has been deprived of the custody of the children by judicial procedure because of unfitness to be their guardian, within the meaning of the statute.

It is clear that these parents, having been divorced, "are not married to each other." See 17 Am. Jur. 539, section 710; 27 C. J. S. 835, section 178, and, as having some bearing, In re Estate of Cornils, 167 Iowa 196, 149 N. W. 65, L. R. A. 1915E, 762; Spain v. Spain, 177 Iowa 249, 158 N. W. 529, L. R. A. 1917D, 319, Ann. Cas. 1918E, 1225. The case, therefore, plainly

934

falls within the first-quoted statutory exception to the rule that "the consent of both parents shall be given to such adoption." It appears without dispute that the mother has the exclusive care of the children. She also provides for their wants to the exclusion of defendant, who has contributed nothing for them since the divorce. It follows from the last sentence of the above statutory provision that under the facts here only the consent of the mother is required. The trial court erred in holding otherwise.

As applied to this case, we find nothing of doubtful meaning in section 10501.3. It is only where a statute is ambiguous or of uncertain meaning that courts are at liberty to apply rules of construction. Where a statute is plain and the meaning clear, courts are not permitted to search for its meaning beyond its expressed terms. We are not permitted to write into the statute words which are not there. Eysink v. Board of Supervisors, 229 Iowa 1240, 1244, 296 N. W. 376, 378, and citations.

In some states statutes regarding adoption, being in derogation of the common law, are strictly construed. This rule, however, has no application in this state. Section 64, Code, 1939; Hopkins v. Antrobus, 120 Iowa 21, 24, 94 N. W. 251. There is language in Seibert v. Seibert, 170 Iowa 561, 567, 153 N. W. 160, which may seem somewhat inconsistent with our rule of statutory construction (now Code section 64) and our decision in Hopkins v. Antrobus. The decision in the Seibert case, however, is eminently sound and our conclusion here is entirely consistent with it and with the language of the Seibert opinion as a whole.

Our decision is also consistent with Rubendall v. Bisterfelt, 227 Iowa 1388, 1390, 291 N. W. 401, 402. There the parents had been divorced and the custody of the child awarded to the mother pursuant to stipulation of the parties. However, the parents had stipulated that, if a divorce were granted, the father would contribute to the support of the child and have the right of visitation. Here there is neither such duty nor such right. The decree in the cited case provided for the father's right of visitation and required him to pay $10 per month for the child's support until he became sixteen years old. The Rubendall case, therefore, held:

"The decree gave effect to these provisions, thus specifically recognizing appellant's rights and his engagement to assist in providing for the wants of the child in the future. Under the circumstances it cannot be said the mother was the parent who provided for the wants of the child to the exclusion of appellant [father]. We do not think the quoted statutory provision may be fairly interpreted as applicable to the factual situation in the instant case."

The implication from the above is that under such facts as are shown here only the consent of the mother is necessary.

Courts generally hold, under statutes somewhat similar to ours, even where the rule of strict construction applies, that where the absolute care, custody, and control of a child is vested in the parent to whom a final divorce is granted, with no parental rights reserved in the spouse at fault and no duty of support placed upon him, only the consent of the former is necessary to an adoption. 2 C. J. S. 389, section 21e(2); 1 Am. Jur. 643, 644, section 43; In re Jackson, 55 Nev. 174, 28 P. 2d 125, 91 A. L. R. 1381, 1386, and annotation 1387, 1389; annotation 24 A. L. R. 416, 425.

Hopkins v. Antrobus, 120 Iowa 21, 25, 94 N. W. 251, 252, involved consent for adoption under section 2601, Revision of 1860, much similar to the part of section 10501.3 now before us. The statute then provided:

"* * * if divorced or separated * * * the consent of the parent lawfully having the care, and providing for the wants of the child * * * shall be given to such adoption * * *."

In construing this provision, we said:

"Now, as the mother, then a divorced woman, is shown by the record to have been 'the parent lawfully having the care of the child,' the consent of no other person or officer was necessary to the adoption * * *."

The trial court concluded that defendant's consent is necessary because he had not abandoned the children. We quote the material part of its "Conclusions of Law":

"* * * in the absence of a full showing of absolute aban-

donment by a divorced parent, and abandonment seems to be used in its strict sense of actual abandonment, it seems to be the policy of the law as expressed by the cases that no adoption may be made without either the consent of the parent not then·in possession or having custody of the children, or a judicial finding made in the adoption matter after notice, and an opportunity to be heard, that he has in fact deserted and abandoned said children, and by reason thereof has either lost or waived the right otherwise given him of consenting voluntarily to their adoption. * * *

"It is the finding of the court under the law that defendant Lyle Alley has not been guilty of any conduct which amounts to a waiver or abandonment or forfeiture of custodial or other parental rights, and that his consent to this adoption not being given, and there being no statutory exceptions which the court finds apply to take away the necessity of his actual consent thereto, that the court is without jurisdiction to make a valid order of adoption.

"In this case the court does not care to make any finding on any theory of general equities in this matter, being convinced that it is a mere matter of statutory construction and can be determined entirely by the construction of the statute as applied to the facts herein."

Assuming, without deciding, that defendant had not abandoned his children in the legal sense, it is sufficient to say that the statutory exception applicable here to the rule requiring the consent of both parents does not provide that the parent whose consent is not necessary must have. abandoned the children. The trial court's conclusion is contrary to the language of the Rubendall opinion, wherein we point out that some of our decisions have recognized exceptions to the requirement of consent to the adoption by both parents *in addition to those mentioned in the statute,* where there has been "conduct which amounts to an abandonment or to a waiver or forfeiture of custodial and other parental rights." See, also, Seibert v. Seibert, 170 Iowa 561, 567, 153 N. W. 160.

Defendant suggests that the terms of the divorce decree regarding care of the children may be changed, as contemplated

by section 10481, Code, 1939. It is sufficient response to this contention that we have uniformly held a divorce decree is final and conclusive until such a change is made and the possibility of future changes in the decree does not affect the parties' status under the decree. Walters v. Walters, 231 Iowa 1267, 1270, 3 N. W. 2d 595, 596, and citations; Newburn v. Newburn, 210 Iowa 639, 641, 231 N. W. 389, and citations.

The dissenting opinion questions our right to entertain this appeal. Defendant makes no such contention. We feel we should not, on our own motion and without opportunity to petitioner to be heard on the question, dismiss the appeal for lack of jurisdiction. Up to now we have consistently entertained appeals in adoption matters under the present statutes. In re Adoption of Kilby, 230 Iowa 557, 298 N. W. 829; Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N. W. 401; Pitzenberger v. Schnack, 215 Iowa 466, 245 N. W. 713. So far as our reports show, our right to do so has never before been questioned.

But, assuming that no appeal would lie from the decree below, if our construction of section 10501.3 is correct, clearly the lower court "acted illegally," so as to entitle petitioner to a review by certiorari under Rule 306 of our Rules of Civil Procedure. Petitioner is therefore entitled to a decision here under our Rule 352, which provides:

"Certiorari or Appeal. If any case is brought to the Supreme Court by appeal or certiorari, and the Court is of the opinion that the other of these remedies was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been sought."

Thus far the case presents nothing but a law question. There are no disputed facts. Both defendant and the trial court recognize this. The opening statement of defendant's brief is:

"There is not any record to speak of in this case. The record is very short and the facts are not in dispute and are easy to understand."

Defendant also says in argument:

"The question to be determined in this case can be determined solely upon the law."

The trial court states in its conclusions of law, "it is a mere matter of statutory construction." That certiorari lies to review such a ruling if no right of appeal exists, see State ex rel. Rankin v. Peisen, 233 Iowa 865, 868, 10 N. W. 2d 645, 647, and citations; 2 C. J. S. 428, section 41.

The dissenting opinion also refers to a statement of the lower court that a guardian's report filed by the mother showed "receipts and disbursements on behalf of said minors, of about $571.00 from sale of farm products and rent." The agreed abstract filed in this court does not show that any such report was offered in evidence or that the matter of such receipts and disbursements was otherwise proven.

This cause is reversed and remanded with instructions to investigate (unless such investigation is "waived by the court upon good cause shown," as permitted by Code section 10501.2), hear and determine this cause. We are not called upon to decide what the ultimate determination of the case should be and express no opinion on that question.—Reversed and remanded.

SMITH, C. J., and BLISS, OLIVER, HALE, MILLER, and MANTZ, JJ., concur.

MULRONEY and WENNERSTRUM, JJ., dissent.

MULRONEY, J. (dissenting)—The majority opinion, holding that the decree of the district court should be reversed with instructions to it to hear and determine the adoption matter, might seem harmless, but the force of the opinion is that an adoption can, under the facts of this case, be consummated without the consent of the father. Such a decision, which touches the power of courts to place children with adoptive parents without the consent of natural parents, needs to be thoughtfully examined.

While I regret the necessity of dissenting, I feel that it is necessary for it is apparent to me that the decision of the majority has been reached through a want of an accurate analysis of the district court's opinion and by disregarding facts that influenced the district court's decision. I do not make such a statement with any imputation that the majority has deliberately changed the record, for I know that the majority feel that the facts as stated in the court's opinion are the only facts legitimately before this court. *The opinion of the trial*

*court was based upon finding of facts and conclusions of law.*
Because I am deeply persuaded that if we are to review this case
we must, in fairness to the parties and the trial court, consider
other important facts, I must dissent.

I feel that a fuller statement of the facts is necessary in
order to record my disagreement with the majority opinion.
I can best do this by quoting the statement of facts made by the
district court:

"About March 15th, 1928, one Geneva Alley and Lyle Alley,
defendant herein, were married, and to them were born six chil-
dren, the parties named in the caption hereof, their names and
ages in 1941 being as follows: Katherine, aged 12; George, aged
11; Barbara, aged 9; Ruth, aged 7; Aleta, aged 5; Lyle Joe,
aged 2.

"Defendant Lyle Alley was first committed to the insane
asylum in 1936 and thereafter discharged, and on June 10th,
1940, was again recommitted to the insane asylum, and had
never returned home since that time. At the time when he was
last committed and prior thereto he had been farming at least
part of the land they were farming, being 80 acres, which he and
wife, Geneva Alley seemed to have purchased together, and on
which there was a small mortgage and some farming equipment
and property. In 1940, 1941 and 1942, the applicant herein,
Marvin Pierce, farmed the eighty acres in question, paying a
share of the crops as rent.

"On November 18th, 1941, Geneva Alley, wife of the de-
fendant herein, and the present wife of the applicant herein
filed in Mills County her petition for divorce against the de-
fendant, Lyle Alley. Service of notice was had on the said Lyle
Alley by acceptance of service on the part of the Superintendent
of the insane hospital at Clarinda. Thereafter and on December
2, two of the sisters of Lyle Alley made application in the divorce
case for the appointment of one Arthur Mauk as guardian for
the purpose of defending in said divorce action. And on the
same day by order of one of the Judges of the District Court
the said Arthur Mauk was appointed guardian for the purpose
of defending such divorce action. The guardian so appointed
on December 11, 1941, filed a motion for more specific statement,
which on March 12, 1942, was responded to by an amendment to

the petition filed on the part of plaintiff. Thereafter, and on June 10, 1942, evidence was offered in the District Court of the State of Iowa in and for Mills County in such divorce case on the part of the plaintiff alone, according to the record. And on June 10, 1942, a decree of court was entered giving Geneva Alley a divorce from the defendant herein, Lyle Alley, and giving to her the care, custody and control of the minor children, giving to the minor children the title to the real estate owned by defendant Lyle Alley and before referred to, and giving to Geneva Alley all of the personal property, livestock and so forth on the property and then in her possession, and finding that the defendant Lyle Alley thereafter had no interest or title thereto in any of the real estate or personal property. On the date of said decree Lyle Alley was an inmate of and confined in the State Hospital for the Insane at Clarinda, Iowa.

"On June 11, 1942, being the day after the divorce in Mills County, Geneva Alley and Marvin Raymond Pierce went to Rockport, Missouri, and were there married. And on March 9, 1943, there was born to these parties a child, who was about six months old at the time of the hearing of this matter.

"At the time of the filing of the application for adoption herein, the said applicant for adoption, Marvin Raymond Pierce, was in the military service.

"On September 9, 1942, Lyle Alley was paroled from the Clarinda State Hospital for insane to his sister, Mrs. Walter Briley, who, for and on behalf of the defendant Lyle Alley filed in the divorce action on December 11, 1942 applications asking that the Decree for Divorce be modified so as to permit him to see and visit his children. And by order of court made on December 11, 1942, the date of December 17th, 1942, was set for hearing and notice prescribed by one of the Judges of the District Court and proof of the giving of such notice duly filed.

"Up to the time of the hearing on this adoption no action had been taken on such application, nor an order made thereon. That the said Lyle Alley continued in the custody or under parole to his sister and was at liberty under such parole on the date of the filing of the application for adoption here, August 17th, 1943, but up to the date of the hearing hereon had not seen his

children, or had no opportunity of visiting with them since the time of his commitment in June, 1940.

"That after the filing of the adoption application and the service of notice, and the filing of original answer therein, and shortly before the same was heard by the court, there was filed in the Office of the Clerk of the District Court of Mills County, under date of September 17, 1943, a certificate of discharge, dated September 15th, 1943, that Lyle Alley was fully and finally discharged from the Commitment and adjudication as an insane person, such certificate of discharge reciting he had fully recovered.

"The record further shows that on the same day as the divorce was granted, to wit, June 10, 1942, and upon her own petition, Geneva Alley, divorced wife of the defendant and mother of the minor children, was by the District Court of Mills County appointed guardian for all of said minors, and letters of guardianship were issued to her on the 22nd day of June, 1942, under the name of Geneva Alley Pierce, guardian of the person and property, who on August 28th, 1943, filed in the office of the clerk of the District Court of Mills County an annual report of Guardian, showing receipts and disbursements on behalf of said minors, of about $571.00 from sale of farm products and rent.

"While Geneva Alley Pierce does not join in the application to adopt filed herein, in writing, nor in writing consent thereto, nor was she authorized by the court as guardian to consent thereto under any record herein, she testifies in open court on the hearing that she gives her consent to the adoption by Marvin Raymond Pierce of the six children of herself and Lyle Alley.

"The application for adoption alleges that Lyle Alley does not consent to the adoption, and the pleadings herein filed reiterate that he does not consent and in substance plead that without his consent the court is wholly without jurisdiction to enter any order for the adoption of said children."

I. At the outset we are met with a jurisdictional question. This purports to be a straight appeal from the action of the district court by one whose application for the adoption of minor children was denied. The district court's action was based upon findings of facts and conclusions of law. I can find no authority

942

for such a right of appeal in chapter 473, or section 12822, or Article V, section 4 of the Constitution of Iowa. Chapter 473 is silent on any right of appeal. That the legislature did not contemplate any right of appeal is amply demonstrated by section 10501.2, which places on the district court the duty (unless waived upon good cause) of verifying the allegations of the petition for adoption and the duty of investigating the conditions and antecedents of the child, and the duty of making appropriate inquiry concerning the proposed home. A proceeding for adoption is not a "case" within the meaning of the above constitutional provision granting to this court "appellate jurisdiction only in cases in chancery." The district court does not sit as a court of record in adoption proceedings such as to grant appeal rights under section 12822, providing for "appellate jurisdiction over all judgments and decisions of all courts of record." Though the district court's findings are recorded, the evidence upon which it makes the findings need not be the subject of a transcript sufficient to form the basis of appeal.

The inadequacy of appeal is well demonstrated by the opinion of the majority, who close their eyes to any evidence that the mother is providing for the wants of these children only in her capacity as guardian of the property of the children, which property was received from their father. This evidence is dismissed in the majority opinion by the short statement, "The agreed abstract filed in this court does not show that any such record filed in this court, and I am not sure that that does not and disbursements was otherwise proven." Perhaps not, but the adoption laws obviously envisage independent inquiry by the court that is asked to sanction the adoption. The trial court even states that the "record further shows that * * * Geneva Alley * * * was * * * appointed guardian * * * who * * * filed * * * an annual report * * * showing receipts and disbursements on behalf of said minors, of about $571.00 from the sale of farm products and rent." This statement of the trial court is in the record filed in this court, and I am not sure that that does not place it in the record in the case. In any event, it is obvious that the trial court apparently tried to perform its duties under section 10501.2, and it made inquiry concerning these facts and it places before this court the result of that inquiry. The divorce decree,

which is in the record, provides that the children shall have the father's property, and it seems to me utterly absurd for this court to dismiss this vital evidence by the statement that it is not in the record.

In my search of the authorities I have not found any case where the applicant for adoption has ever maintained an appeal to any supreme court from an order denying same under a statute that did not specifically authorize such an appeal. In fact, the general rule is that unless the statute specifically so provides no appeal will be allowed when the court grants the adoption. See 2 C. J. S. 428, section 41; In re Adoption of Palmer, 129 Fla. 630, 176 So. 537. In the case of In re Adoption of Hughes, 88 Okla. 257, 258, 213 P. 79, 80, the Oklahoma Supreme Court held it had no jurisdiction upon an appeal from the action of the county court setting aside an adoption, stating:

"In the first place, there is no specific statute providing for appeals to the Supreme Court from the action of the county court in adoption matters. It has been held by the Supreme Court of Kansas, where the statutes on adoption are substantially the same as our own that: 'An order of the probate court permitting the adoption of an infant child is conclusive so far as that court is concerned. Such court has no further jurisdiction in the matter.' In re Bush, 47 Kan. 264, 27 Pac. 1003.

"In the second place, the Supreme Court of California, where the law of adoption still more closely approximates our own, holds: That the adoption of a child is essentially a matter of contract between the parties whose consent is required, and is not a judicial proceeding, although the sanction of a judicial officer is required for its consummation. In re Johnson's Estate [98 Cal. 531], 33 Pac. 460 [21 L. R. A. 380]; In re Stevens, 83 Cal. 322, 23 Pac. 379 [17 Am. St. Rep. 252].

"If this is good law, and there is no serious contention that it is not, of course it follows that this court has no jurisdiction on appeal over such matters, and for this reason the appeal in the first proceeding must be dismissed."

See, also, Baxter v. Sleeman, 196 Wis. 562, 564, 221 N. W.

382, 383, where the court, in holding no appeal lies in an election-recount proceedings, stated:

"Under the provisions of sec. 6.66 the court acts solely pursuant to the election laws. The statute prescribes how a final result shall be arrived at. It provides no appeal from the determination made by the circuit court."

Nor do I feel that certiorari would lie in this case sufficient to give this court jurisdiction under Rule 352, Rules of Civil Procedure, allowing this court to proceed as though that form of review had been invoked. The decree in this case specifically states that it is founded upon findings of fact and conclusions of law. I do not think the two can be separated.

To me, the majority opinion is a review of a finding of facts. As I analyze the district court's opinion, I find that it concluded as a finding of fact that the mother was not the person who (under our decision in the case of Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N. W. 401) is the "parent having the care and providing for the wants" of the children within the exception of Code section 10501.3. Upon such a conclusion of fact it based its conclusion of law that it had no jurisdiction to grant the adoption because of the lack of consent of the father. With such a conclusion of fact it was, as it stated, "a mere matter of statutory construction," and it did not need to go into the "general equities" for, as it stated, the matter could be "determined entirely by the construction of the statute *as applied to the facts herein.*" (Italics supplied.) As I will point out in the next division, I believe the majority would hold that unless the mother is the person who has the care and provides for the wants of the children the district court has no jurisdiction to grant adoption without the consent of the father. Therefore, under this analysis, the majority opinion amounts to a review of a finding of fact.

The majority opinion seems to hold that the court was in error in its conclusion of law, stating:

"The trial court concluded that defendant's consent is necessary because he had not abandoned the children."

But this only touches one part of its conclusions of law. The

majority opinion quotes a portion of the opening remarks of the district court wherein it stated that its review of the cases indi-cated to it that it was the "policy of the law" that no adoption may be made without either consent of the parent out of custody or a judicial finding that this parent has deserted and abandoned the children, or by reason thereof either lost or waived the right to consent to the adoption. I cannot see anything very wrong with the statement as the policy of the law, but it is not, in my opinion, the "material part" of the trial court's con-clusions of law, as the majority opinion states. In order to understand its conclusions of law we must believe that the district court had our latest pronouncement on this adoption statute be-fore it in the case of Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N. W. 401. In this case we held no adoption could be consum-mated without the consent of the divorced father if the decree provided the father pay for the child's support. There, too, we discussed other situations where the consent of the father would not be necessary if he waived, or had forfeited or abandoned his statutory custodial rights, and concluded that the father in that case had not abandoned his custodial rights.

To show that the district court here had a clear conception of our pronouncement in the Rubendall case, I quote from its opinion:

"Consent seems to be required by the plain and clear language of the statute, and in the absence of consent, unless it has been lost or waived or taken away by some judicial process, so as to bring it within one of the exceptions named in the statute there can be no legal adoption, and the Court asked to make such adoption, is wholly without jurisdiction to make the order of adoption. Rubendall v. Bisterfelt [227 Iowa 1388], 291 N. W. 401, seems to settle this matter."

I think this is a correct statement of our holding in the Rubendall case, and after this pronouncement the court pro-ceeded, as it should do, to first answer and determine the juris-dictional question. In the Rubendall case we had stated this question must be answered first. If the consent of both parties was not obtained, the district court had no jurisdiction unless certain facts were found. It first pointed out that the decree of

divorce (like the decree in the Rubendall case) provides for "property and means for their [children's] support from the property of the defendant [in the divorce action] * * * Lyle Alley." Then it concluded that there had been no abandonment by the father such as to give it jurisdiction without the father's consent. This answered the second proposition in the Rubendall case. Then it stated in its opinion:

"It is the finding of the court * * * that defendant Lyle Alley has not been guilty of any conduct which amounts to a waiver or abandonment * * * of custodial rights * * * *and there being no statutory exceptions which the court finds apply to take away the necessity of his actual consent thereto,* that the court is without jurisdiction to make a valid order of adoption." (Italics supplied.)

I do not believe the statement in the majority opinion that the trial court concluded the consent of the father was necessary because he had not abandoned his children is a correct statement of the trial court's conclusions. I feel that a study of its opinion discloses its conclusion that the consent of the father was necessary because he had not abandoned his children and *because it did not find any "statutory exceptions"* applied to take away the necessity of his actual consent. As I will point out in the next division, I feel it correctly applied the rule laid down by us in the Rubendall case when it made its finding of fact that none of the exceptions applied. Assuming it was correct in its finding of fact in this regard, then surely it had no jurisdiction without the father's actual consent and it was correct in so holding.

Under this record, I do not believe certiorari would be available to the applicant to enable him to secure a review in this court. It is true, as the majority points out, we have heard these appeals before. This is the first one by the unsuccessful applicant for adoption. If we have no jurisdiction to hear such appeals, none would be gained by a failure to move for dismissal.

II. Insofar as the majority opinion treats the case as legitimately before us, I also wish to dissent. The majority opinion states:

"It is clear that these parents, having been divorced, 'are

not married to each other.' * * * The case, therefore, plainly falls within the first-quoted statutory exception to the rule that 'the consent of both parents shall be given to such adoption.' ''

While this perhaps dispenses with the necessity for the consent of both parents, it does not determine which parent can, by consent, give the child in adoption. We must pass to the later sentence in the statute:

"If not married to each other, the parent having the care and providing for the wants of the child may give consent."

The majority opinion finds nothing of "doubtful meaning" in section 10501.3. I do not find it so clear, but I do agree with the majority construction, which I think is the same employed by the district court. I would like to state my understanding of that interpretation. Whereas the first part of the statute states the consent of both parents is necessary unless "the parents are not married to each other," we have construed this to mean the consent of both parents is necessary even though they are not married to each other if the nonconsenting parent out of custody does contribute to the support of the child. Surely this is what we held in the Rubendall case, where we held the decree of adoption void because the wife's divorce decree provided the father, who had not consented, pay $10 a month for the support of the child. I think it is what the majority opinion holds here, for, though the opinion states that because the parents are not married to each other, "the case * * * falls within the first statutory exception," still, the opinion seems to hold that under the facts only the consent of the mother is required because she "has the exclusive care of the children" and "she * * * provides for their wants to the exclusion of defendant, who has contributed nothing for them since the divorce."

Thus, the majority opinion concludes that the father has not provided for the wants of the children and therefore his consent to the adoption is not essential to the court's jurisdiction. As stated, the district court in its opinion pointed out that the divorce decree provided for the children's support from the father's property, and it found, in effect, that the father did provide for the wants of the children and found that the father's

consent was essential to its jurisdiction. Certainly there was evidence to support the district court's finding—evidence in the form of the divorce decree which stripped the father of all his property and turned over his one-half interest in the farm (with a small mortgage on it) to the children, and all his personal property, livestock, and so forth, to his wife—and evidence that the mother as guardian for the children received and disbursed on behalf of these children the sum "of about $571.00 from sale of farm products and rent" within a thirteen-months' period.

The majority finds its opinion "consistent with Rubendall v. Bisterfelt." This is true only if the court remains deaf to the evidence of the income received by the mother, as guardian for her minor children, from the property turned over to the children by the divorce decree. If we heed that testimony, then the opinion is clearly inconsistent with the Rubendall case. Both divorce decrees made provision for the support of the children, from the property of the nonconsenting parent. In one, the provision was for a monthly payment by a presumably competent wage earner, and we held his consent to the adoption was essential to give the district court jurisdiction. In the instant case, the provision was that the income-producing property of the mentally sick parent be turned over to the children, and the majority opinion holds his consent is not essential to the adoption.

Nor can any point be made that in the Rubendall case the provision in the decree was first the subject of a stipulation. Here the incompetent husband could not make such a stipulation for the support of his children. Indeed, the evidence here seems much stronger, for in the Rubendall opinion there is not any statement that the father ever did pay one cent for the support of the child, while here, the father's property does show a fairly good income that has been devoted to the support of the children. The distinction which the majority see that the Rubendall case involved a consent on the part of the husband to the decree for support money for the child and visitation rights is surely not important. The question is not whether the father consents to pay money for the support of the child, but rather whether his money is supporting, or rather, caring for the wants of the child. If we consider the testimony of the income from the father's property that is devoted to the support of the children, the dis-

tinction between the two cases vanishes and I feel a clear conflict results. The majority opinion states in two different places that the father has contributed nothing to the children's support since the divorce. This statement depends for its accuracy on first ignoring the testimony which the trial court says was in the record of the $570 annual income from the father's property which is used for the support of the children.

The record shows that the father has been mentally sick and, up to the time of the application for the adoption, he could not earn money to support his children. After the application was filed he was discharged from the hospital at Clarinda as fully recovered. He has an application pending in the divorce action for modification of the decree to permit him to see and visit his children. He is now, and was before the decree in the lower court, perfectly competent to give or withhold his consent to the adoption of his children. While he was in the hospital at Clarinda he was stripped of his wife, six children, and all his property in a divorce action. The applicant is the man who farmed the appellee's farm while he was in the hospital, and who married the appellee's wife in Missouri the day after she secured her Iowa divorce. By this proceeding the applicant wishes to secure complete rights of a father over the children and he intends to change their name to his. The majority would hold that the district court would have jurisdiction to sanction the adoption without the consent of or notice to the father. I find no warrant in law or equity for such a conclusion.

The majority opinion will have far-reaching effect. Under it, the mother who secures custody of the children and her husband's property in a divorce action can give the children in adoption without notice to or consent of the husband. I do not think the law permits this. The district court here recognized that the law gave it jurisdiction to sanction an adoption only if there was consent of both parents, unless the facts showed one of the exceptions was present that rendered the consent of one parent unnecessary. It found, as a finding of fact, that the facts here did not show the application of any exception.

The majority opinion does not indicate whether the proceeding below was in law or in equity or whether it is here de novo or upon error. I gather that the majority consider this to

950

be an equitable proceeding and it is here de novo. The holding of the majority is, I believe, a review of conclusions of fact. The cause is reversed and the trial court is instructed ''to investigate * * * and hear and determine this cause.'' This is something it could not do under the statute without the fact conclusion now found by the majority that the mother was the one who supplied the wants of the children, rendering the father's consent unnecessary. I would affirm the case.

WENNERSTRUM, J., has authorized me to state that he joins in this dissent.