IN RE ADOPTION OF ORVILEEN KAY CHINN.

ELSWORTH ERLE GROVE et ux., Appellants, v. ORVILLE EDWARD CHINN, Appellee.

No. 46931.

JANUARY 14, 1947.

Miller, Miller & Miller, of Cherokee, for appellants.

Nelson & Nelson, of Cherokee, for appellee.

OLIVER, J.—February 13, 1946, Rose LaVonne Chinn secured a divorce from Orville Chinn in Cherokee District Court on the ground of cruel and inhuman treatment. Orville Chinn appeared but did not contest the divorce. The parties had one child, Orvileen Kay Chinn, born March 5, 1942, and the decree found Mrs. Chinn was a suitable person for the custody of said child. In conformity with an oral agreement of the parties said decree provided:

"* * * plaintiff [Mrs. Chinn] is hereby awarded the custody of the minor child, Orvileen Kay Chinn and that the defendant shall have the right to visit said child at all reasonable times, and shall further have the right to take said child to his home in Marcus for periods not exceeding one week in length and not oftener than once every three months.

"* * * that no alimony or support money is awarded the plaintiff * * *.

"The court shall retain jurisdiction of this cause for the purpose of hearing any further applications dealing with the custody or support of the said Orvileen Kay Chinn. In the event that the plaintiff should permanently move from the State of Iowa the said plaintiff shall give the defendant at least 10 days notice by ordinary mailing to Marcus, Iowa, of her intention to move from the State in order that the defendant might have an opportunity to raise any future question as to the custody of said child."

The decree also gave each party permission to remarry at any time.

March 23, 1946, Mrs. Chinn married Elsworth Erle Grove and the child, Orvileen, has since lived at Cherokee with her said mother and stepfather, who are appellants herein. Appellee, Orville Chinn, the father of said child, lives at Marcus in the same county.

April 11, 1946, appellants filed in said Cherokee District Court, under chapter 600, Code of Iowa, 1946, their petition to adopt said child, alleging that the divorce decree awarded the wife the permanent care and custody of the child, reserving certain rights of visitation to the divorced husband; that the divorced husband did not agree to pay any support money for said child, had not contributed to the support of said child, had abandoned the child, was confined in jail under sentence for an indictable misdemeanor, and was not a suitable person to have her care and control. April 30th, appellee filed answer resisting the adoption, in which he admitted he did not agree to pay support money for said child and that he had not contributed anything to the support of such child; denied the alleged abandonment and asserted that he had twice attempted to visit the child but was unable to discover her whereabouts; and alleged he was no longer confined in jail, was regularly and gainfully employed, and was a suitable person to have the care and control of said child.

Upon trial the court denied the adoption on the ground that the consent of both parents to the adoption was necessary under section 600.3, Code of Iowa, 1946, which provides, in part:

"The consent of both parents shall be given to such adoption unless * * * the parents are not married to each other * * *.

"If not married to each other, the parent having the care and providing for the wants of the child may give consent."

From said judgment Mr. and Mrs. Grove have appealed.

The decree recited appellant Rose LaVonne Grove was not the parent having the sole and absolute custody of the child and providing for all her wants to the exclusion of appellee, and there was no showing that appellee had, as yet, abandoned said child or waived or forfeited his parental right to insist that his consent be first obtained before his child be given in adoption by the court. The court found also that appellants were of good character, loved the child, were financially able to care for her, that the proposed home and the child were suited to each other, and that no reason appeared why the six-months' minimum residence requirement of section 600.2, Code of 1946,

should not be waived by the court, if the court could properly grant the adoption without appellee's consent.

The principal question in this case is whether the divorced mother was "the parent having the care and providing for the wants of the child" so that the child could be adopted without the consent of the divorced father. The decree of the trial court refers to various decisions upon this point and points out that the divorce decree of In re Adoption of Alley, 234 Iowa 931, 14 N. W. 2d 742, granted the mother the absolute care, custody, and control of the children and reserved to the father no right of visitation nor other rights; that the divorce decree of In re Adoption of Karns, 236 Iowa 932, 20 N. W. 2d 474, made no reference to the then unborn child and contained no provision regarding any right of custody or duty of support; and that in Eggimann-Eckard v. Evans, 220 Iowa 762, 263 N. W. 328 (under a former statute), the divorce decree gave the wife the absolute custody of the children. In each of these cases the consent of the divorced mother was held sufficient. However, in Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N. W. 401, in which the divorce decree (in conformity with a stipulation) gave the mother custody and control of the child, required the father to contribute substantially toward its support, and gave him the right of visitation, the consent of the divorced mother (alone) was held insufficient.

None of the foregoing cases is here precisely in point factually. In the case at bar certain agreed provisions were incorporated in the divorce decree by which the husband was given rights to visit and be visited by the child and was to be notified prior to the permanent removal of the wife from the state.

However, the agreement and decree did not require that the husband exercise any of the parental privileges given him. Nor was there any requirement that he perform any parental duties. He was not required to contribute substantially toward the support of the child, as was the divorced father in Rubendall v. Bisterfelt, supra. There was no engagement on his part to do anything. He joined in procuring the provisions in the decree "that no alimony or support money is awarded the plaintiff,"

**8**

which released him (as between the spouses) from primary legal obligation to contribute to the support of the child.

 The language of the statute is, ''the parent having the care and providing for the wants of the child may give consent.'' The word ''care'' is used in the statute in the sense of charge or oversight, implying responsibility for safety and prosperity. As used in the statute it generally includes custody as provided for in a divorce decree.

 The mother was awarded the custody of the child. Under the divorce decree, as between the parents, the immediate legal duty of support and maintenance of the child rested with the mother and she performed that duty. Under the circumstances shown in the record she was ''the parent having the care and providing for the wants of the child.'' The rights given the father to visit the child and to take her to his home for one week in each three months did not give him the care of the child within the meaning of the statute. Hardesty v. Hardesty, 150 Kan. 271, 273, 92 P. 2d 49, 50, which involved a similar statute, states:

''As stated, under the decree of divorce the custody of the child was given to the father, the plaintiff in that action. The adoption statute required the consent of the parent to whom the custody of the child was given. The consent of the father was given and the validity of the adoption was not affected by the fact that in the decree of divorce the petitioner was permitted to visit the child from time to time. Right of visitation does not give custody.''

In re Adoption of Kelly, 47 Cal. App. 2d 577, 118 P. 2d 479, 482, cites the foregoing decision and holds a provision in a divorce decree permitting the child to stay with the father one night a month was a right of visitation and did not bestow custody.

Nor do we agree that where a divorce decree permits a parent to be temporarily visited by a child whose custody has been granted the other spouse the furnishing of food, lodging, etc. for the child during such visits constitutes providing for the wants of the child, within the meaning of the statute. Our conclusion upon this point is supported by In re Adoption of Karns, supra,

236 Iowa 932, 938, 20 N. W. 2d 474, 477, which holds that offers of assistance to the mother and gifts of clothing for the child did not alter the status of the mother as the parent who had the care and provided for the wants of the child.

It is suggested the granting of the adoption would modify provisions of the divorce decree granting the father the right to visit and be visited by the child and the provision of the decree specifically retaining jurisdiction to pass upon further applications involving the custody or support of the child. Adoption is a statutory proceeding authorized by chapter 600, Code of 1946. Adoption does change the status of a child and may affect incidents of a divorce decree involving parental duties and privileges. But where the conditions and circumstances prescribed by chapter 600 as warranting adoption are shown to exist, the fact that the adoption may affect certain incidents of a prior divorce decree is not a bar to such adoption. In the language of In re Adoption of Kelly, supra, 47 Cal. App. 2d 577, 582, 118 P. 2d 479, 482, ''Where the conditions specified in section 224 [which refers to the adoption of children of divorced parents] exist, an adoption may be ordered, notwithstanding parental interest, including specified privileges under a divorce decree.'' See, also, Hardesty v. Hardesty, supra, 150 Kan. 271, 92 P. 2d 49, 52; Morrison v. Chamberlain, 119 Kan. 803, 241 P. 115, 116; 2 C. J. S. 415, section 35.

Nor is the power to grant an adoption affected by the possibility of future attempted changes in certain incidents of the divorce decree, under a specific reservation of jurisdiction in such decree or under the general reservation of section 598.14, Code of 1946 (section 10481, Code of 1939). In re Adoption of Alley, supra, 234 Iowa 931, 936, 14 N. W. 2d 742. In the case at bar the divorce and adoption proceedings were both in the same court. However, the fact that a child is under the jurisdiction of a court in divorce proceedings between its parents does not prevent even another court from having jurisdiction of the same child for its adoption on the consent of the parent to whose custody it has been given. Younger v. Younger, 106 Cal. 377, 39 P. 779; In re Adoption of Kelly, supra; Hardesty v. Hardesty, supra; Morrison v. Chamberlain, supra.

The dissenting opinion herein undertakes to distinguish Hardesty v. Hardesty, supra, 150 Kan. 271, 92 P. 2d 49, on the ground that the statute therein involved is "totally different." The dissent summarizes the Kansas statute thus:

"The statute gave the divorced parent to whom custody of the child was awarded the absolute right to consent to adoption and rendered the consent of the other parent desirable but not necessary."

The Kansas statute involved in the Hardesty case reads:

"If the parents of such minor child shall have been divorced, the consent of the parent to whom custody of such child shall have been awarded shall be necessary to authorize an order of adoption, but the consent of the other parent, though desirable, shall not be necessary." General Statutes of Kansas, 1935, 38–106.

The foregoing statute appears to be more favorable than ours to the divorced parent to whom custody is not awarded. It does not provide that the parent to whom custody is awarded must, in order to consent to the adoption, have the care and provide for the wants of the child. It may be conceded such care and provision are usually furnished by the parent to whom custody is awarded. But the Kansas statute does not expressly so provide. Further, there is nothing in the Iowa statute that makes desirable the consent of the parent to whom custody is not awarded.

The decree of the distinguished trial court denied the adoption on the ground that the consent of both parents was necessary under the statute. Thereafter the trial court made additional findings of fact, which state in their conclusion:

"An adoption in this case has been denied by the court because of the legal questions involved in said adoption proceedings and the court knows of no reason why the adoption should not be granted if petitioners' contentions on the legal questions involved are correct."

The burden of appellants' contention in the trial court and upon appeal was that the consent of the divorced father was not required to confer jurisdiction upon the court to decree

the adoption. It is our conclusion that, under the circumstances, such consent was not required. This conclusion requires that the cause be reversed and remanded. In view of the findings and additional findings of the trial court, it may, upon remand, order and decree the adoption, or if, in the exercise of its judicial discretion, it so determines, it may further investigate and hear the matter and make such decree as may then be proper. —Reversed and remanded.

GARFIELD, HALE, BLISS, MANTZ, SMITH, and HAYS, JJ., concur.

MULRONEY, J., and WENNERSTRUM, C. J., dissent.

MULRONEY, J. (dissenting)—I have on other occasions voiced the more than ordinary apprehension I feel with respect to the decisions of the majority of this court in adoption cases. In In re Adoption of Alley, 234 Iowa 931, 14 N. W. 2d 742, I protested when the majority felt the divorced wife was allowed to give the father's children away in adoption without his consent, though the record showed the father was in a mental hospital and the trial court said the wife, as guardian of the children, used income received from the husband's property for the support of the children. In In re Adoption of Karns, 236 Iowa 932, 20 N. W. 2d 474, I remonstrated when a divorced wife, who spurned the ex-husband's offer of support for the child, was allowed to give the child away in adoption without his consent. In each of these cases the adoption was allowed without the father's consent on the theory that the mother was in each instance "the parent having the care and providing for the wants of the child" within section 600.3, Code, 1946.

What is the record in this case? It clearly appears that this was one of those "convenient" divorces, where Rose Chinn succeeded in divorcing her husband, within six days after filing her petition, in order to marry the man she had been keeping company with before she filed for divorce. She paid all the costs but her husband accommodated her in the matter of waiving notice and time of filing. She admits that the provision in the decree with respect to custody of the child was "in conformity to an oral agreement" between herself and her husband. This

part of the decree gave the child's father a right to have the child in his home one week out of twelve and a right to visit the child at all reasonable times. One can easily infer that she secured her easy, uncontested divorce by agreeing to this split custody. Less than six weeks after her divorce she married Grove and three weeks later the petition for adoption is filed.

The trial court in its findings of fact, which appellant admits by stipulation is correct, stated that the father had all the natural affection of a father for his child; that he had not abandoned the child. The trial court stated that if it were to grant the adoption petition "it would nullify the [visitation] provisions of said [divorce] decree * * *." It felt the case was ruled by Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N. W. 401, and held Rose Grove was not the parent having the sole and absolute custody of the child to the exclusion of its father. I think the trial court was right.

Perhaps I have, in the prior dissents referred to, adequately stated my views. There is, however, one point that has not been stressed that I feel merits further mention. The statute dispensing with a parent's consent in adoption proceedings is an exception to the general provision requiring that "the consent of both parents shall be given to such adoption * * *." Section 600.3, Code, 1946. As an exception to the general statutory requirement it should be strictly construed in favor of the non-consenting parent. The following from In re Jackson, 55 Nev. 174, 179, 28 P. 2d 125, 127, 91 A. L. R. 1381, expresses the general and uniform rule:

"Consent of the parents to the adoption of a legitimate child is a most important item of adoption procedure. Under our statute it is specially required to make the adoption legally effective, unless the case falls within one of the exceptions prescribed in the statute itself as sufficient ground for dispensing with parental consent. * * * If we were to construe this provision literally, then the consent of respondent to the adoption would be unnecessary and the adoption valid without it. But the nature of the proceedings forbids us to so construe it with reference to the facts of this case. The act of adoption takes a child away from its parent by destroying the legal and natural

relation between them and creating in its stead an artificial relation deemed by law to be for the best interests of the child. * * * As the statute confers a special power of this kind which may be exerted in opposition to the wishes, or without the consent of the parents, it should be strictly construed in their favor. The courts are quite uniform in applying the rule of strict construction in favor of the parents' natural rights in adoption proceedings.''

For other authorities, see annotation in 91 A. L. R. 1387; 24 A. L. R. 424; 1 Am. Jur. 643, section 43. The same rule of strict construction, where a nonconsenting parent was objecting to an adoption, was followed by this court in Seibert v. Seibert, 170 Iowa 561, 153 N. W. 160. The majority in the Alley case thought some of the language in the Seibert case might be inconsistent with their conclusion but ended with the remark that the Seibert case was ''eminently sound.'' I recommend a reading of that decision and some of the hypothetical cases discussed and held up as examples of where a literal construction would lead to unreasonable results.

I can suggest the following hypothetical case, which, under the majority opinion, would mean a mother's protest to an adoption would be of no avail: A husband decides he would like to marry the girl he has been keeping company with and he talks his wife into co-operating with him to the end that he get a divorce and the custody of their child, which, of course, he agrees to support. He agrees that the child's mother will have the right to visit the child at all reasonable times; agrees that she can take the child into her home for a week at a time; and that he will never take the child out of the state. He may or may not agree to pay the mother alimony. In any event, the agreement is carried into the divorce decree. The father marries his girl friend and they immediately join in an adoption petition for the child. Assume, too, the mother had a mother's natural affection for her child and could not be said to have abandoned it. The majority would, of course, hold the mother's consent unnecessary and that the adoption could be effected without her consent, for this is not a true hypothetical case. It is the very case, with the position of the mother and father reversed.

14

The majority has now made it abundantly clear that the statutory exception is to receive a literal construction in favor of the parent who seeks to give in adoption without the consent of the other parent. Any parent who has the child in his or her possession, and provides for the child, will be able to give the child away in adoption without the consent of the other parent. It makes no difference if the other parent offers to support the child. See Karns case, supra. It makes no difference if the parent having possession of the child has no order of court granting custody to that parent. See Karns case. It makes no difference if the parent out of custody is ill in a hospital. See Alley case, supra. It makes no difference if the child is supported, partly at least, from the income from the other parent's property. Alley case. It makes no difference if one parent agrees and consents to the primary liability to support the child in his or her custody. Majority opinion here. The length of time during which the parent out of custody actually does not support the child and his or her ability to render support are immaterial. The period was three years in the Karns case, during which time the father, offering to support the child, was in the Army. The period was a little over one year in the Alley case, during which time the father was in a mental hospital. Here the period between the divorce and the filing of the adoption petition was about eight weeks, during which time the father was in jail on a misdemeanor charge. It can be admitted that the parent out of custody has not done anything to warrant a finding that such parent has abandoned the child and that such parent has all the natural love and affection for the child as usually exists between a parent and child. That was admitted in this case, for there is no record of the testimony and both parties stipulate the trial court's findings with respect to the father's not abandoning his child and having a parent's natural affection for his child are correct. Surely the statute, properly construed, means the parent out of custody must be shirking some duty. I think the sensible construction, which expresses the evident legislative intent, is that the parent who has not the "care" and does not "provide for the wants of the child" must be guilty of some neglect of parental duty; some

failure to "care" for the child or provide for the child's "wants"; some omission of a parental obligation to care and provide for the child, which the parent, having the ability to perform, willfully or carelessly leaves to the other parent. At the time of the decision in the Seibert case the statute provided if the parents were "divorced, separated or unmarried, the consent of the parent lawfully having the care and providing for the wants of the child" would be sufficient, and in the Seibert case, supra, 170 Iowa 561, 563, 567, 153 N. W. 160, 162, we stated:

"It would not be necessary, in order that the parties should be considered as separated, that there should be an abandonment, but we think there must be something in the nature of an abandonment, or a condition that is more or less permanent and for some length of time."

In the instant case the parties agree by their stipulation that there was no abandonment and the condition had existed about eight weeks.

The majority relies to a large extent on In re Adoption of Kelly, 47 Cal. App. 2d 577, 118 P. 2d 479, and Hardesty v. Hardesty, 150 Kan. 271, 273, 92 P. 2d 49, 50. These cases involved totally different statutes. The latter case involved a suit to set aside a completed adoption on the ground of fraud. The statute gave the divorced parent to whom custody of the child was awarded the absolute right to consent to adoption and rendered the consent of the other parent desirable but not necessary. Since the consent of the parent having the custody award was obtained, the court held "the order of adoption could not be impeached for failure to serve notice" on the other parent.

In the Kelly case, supra, 47 Cal. App. 2d 577, 579, 118 P. 2d 479, 480, the statute provided:

"After the custody of any child has by any judicial decree, been given to the mother, and the father for a period of one year shall willfully fail to pay for the care, support and education of such child when able to do so, then the mother alone may consent to such adoption, but only after the father has been personally served with a copy of a citation." Civil Code of California, section 224.

The record showed the father had, for a period of two years, failed to pay anything for the child's support. The opinion merely holds that there was evidence from which the trial court could find the nonpayment was willful and it did not abuse its discretion in granting the adoption over the father's objections.

I would affirm the ruling of the trial court.

WENNERSTRUM, C. J., joins in this dissent.