IN RE ADOPTION OF DAWN CHERIE ELLIS.

DWAYNE MOZENA and DONNA B. MOZENA, appellants, and
ERNEST REX ELLIS, appellee.

No. 52303.

(Reported in 149 N.W.2d 804)

APRIL 4, 1967.

Stephen C. Robinson and Robinson & Robinson, of Des Moines, for appellants.

Dudley C. Lowry, of Davenport, for appellee.

MASON, J.—Dwayne Mozena and his wife Donna appeal from an order overruling their motion for new trial after judgment dismissing their petition for adoption of Dawn Cherie Ellis.

July 23, 1965, appellants filed in the Polk District Court their petition for adoption of Dawn Cherie, a female child born

September 18, 1964. Dawn was received into appellants' home September 24 by agreement and consent of her natural mother, Velma Ellis.

Velma Ellis was divorced from Dawn's father, Ernest Rex Ellis, March 31, 1964, in Scott County. Mr. and Mrs. Ellis were the parents of two other children and Velma was pregnant with Dawn at the time of the divorce. Velma was given custody of the two living children and Rex had visitation rights. No provision was made in the decree as to who was to have the custody of Dawn. Rex was ordered to pay $20 per week child support with $5 additional child support after Dawn's birth. He was also to pay the doctor and hospital bills incident to her birth.

Attached to the petition for adoption was Velma's written consent to the adoption of Dawn by appellants, waiving notice with reference to the adoption proceedings and consenting to the jurisdiction of the Polk District Court of the proceedings for adoption. This instrument was dated September 21 at Davenport.

At the time Dawn was taken from the hospital by appellants, it was reported Mrs. Ellis's attorney had the consent of the natural father, but in fact the consent of Rex was never obtained. Appellants alleged in their petition that Rex had abandoned the child.

I. July 23 an order for investigation had been entered as well as an order fixing the time and place of hearing on the petition for August 20 and prescribing notice. August 13 an attorney appeared on behalf of Rex Ellis. No hearing was had August 20.

September 30 another order was entered resetting the matter for October 6, prescribing notice to be given Rex and Mrs. Ellis's attorney for the purpose of determining Rex's rights in the adoption proceedings.

October 13 Rex Ellis filed a resistance to appellants' petition for adoption, asking the petition be dismissed and that he be given custody, control and care of Dawn. The case was called for trial at 10:30 a.m. the same day. Mr. Ellis and his mother testified and were cross-examined. Velma Ellis did not appear as a witness at the hearing.

Rex testified he was employed as a truck driver by a Davenport cement firm at a take-home pay from $92 to $112 a week depending on the amount of overtime; he was at the hospital Friday when Dawn was born, went back the following day but did not get to see the baby; Sunday morning he returned to the hospital to see Velma and appellants' attorney was there with some papers for her to sign. Rex was not asked to sign any papers at this time. The attorney left his card. Rex testified he returned Monday to the hospital, his wife had gone home Sunday and he went to her house and asked where was Dawn. He asserts Velma told him the baby could not come home for a few days. While Rex was there appellants' attorney came to the house but nothing further occurred.

Rex said he made no later attempts to see Dawn or locate her until he went to see the assistant county attorney. After three months he had found out nothing and did not learn who had Dawn until two weeks before the October 13 hearing. When he asked Velma about the child, she maintained she knew nothing.

Rex testified if the court saw fit to give him the child's custody, his mother who lives in Leon would care for her. He would get a job in Leon so he could be with Dawn. He denied abandoning the child.

On cross-examination after much confusion, Rex admitted receiving notice of hearing on appellants' hearing for adoption of Dawn on July 27, denied living with Velma as man and wife after the divorce and admitted he had not paid the confinement charges although he had made an effort to do so. Rex further denied making a telephone call to appellants' attorney August 4.

Grace Ellis, age 53, Rex's mother, testified her husband was employed as a bridge foreman by Decatur County. She, her husband, a son 30 and a nephew 14 lived in their one-story dwelling in Leon consisting of a kitchen, living room and a playroom that could be made into another room. She testified her health was good, she had had the nephew for 13 years, Rex had asked her to take care of Dawn and she told him she would temporarily until he could find a home; that if the court saw fit to give them Dawn she would take good care of her and treat

her so she would have a fine home until Rex could establish his own home.

At the conclusion of this testimony appellants moved for a continuance because of the unavailability of witnesses they expected to call. The trial court made inquiry of counsel if he cared to make an offer of proof so the court might know what appellants expected to prove by these witnesses, indicating the court felt such an offer was proper in view of the motion for continuance; that the matter had been set on appellants' application and appellee, his attorney and witnesses were present after a trip from Davenport and had a right to have the matter tried.

Counsel then announced he would like to show that Rex had been incarcerated in the Scott County jail many times for nonsupport of the other children, for disturbing the peace and for breaking and entering into Velma's home; that he would like to show by calling Velma that Rex was not a fit person to have the care, custody and control of Dawn; that he would like to call a Davenport attorney to show Rex had not made inquiry as to the whereabouts of Dawn in any manner and he was led to believe appellants would not be required to present any evidence on this date by reason of a conversation with the trial judge who entered the September 30 order setting the matter for hearing.

The trial court denied the motion for continuance, dismissed appellants' petition for adoption and granted the child's custody to Rex to be put in the home of his parents until such time as it is shown to the court by modification or competent testimony that this is not a proper place for the child to reside; that if Rex was unfit it was up to the natural mother to come in on a modification of the decree to show that fact.

On October 13 a judgment embodying this announcement was entered.

October 19 appellants filed a motion for new trial which was heard November 30. Appellants made a showing at that time what they expected to prove by presenting the statement of various witnesses. The motion was overruled and this appeal was taken.

513

II. Appellants assign six propositions relied on for reversal. We summarize: The trial court (1) erred as a matter of law in awarding Rex Ellis the custody of Dawn as the question of custody was not before the court in the adoption hearing and such procedure deprived Velma of her rights without notice; (2) failed to make a finding of fact whether the natural father was a suitable person to have custody; (3) failed to find that the best interest and welfare of Dawn required or at least made expedient a change in custody; and (4) failed to find the consent of Rex was unnecessary as he had abandoned the child.

III. In Iowa as a general rule trial procedure in adoption cases is governed by equitable rules. In re Adoption of Perkins, 242 Iowa 1374, 1378, 49 N.W.2d 248, 250; Burrell v. Burrell, 256 Iowa 490, 493, 127 N.W.2d 78, 80. Our review is de novo. Rule 334, Rules of Civil Procedure.

Appellants' first contention presents the question whether the Polk District Court had jurisdiction to award custody of a child of divorced parents in an adoption proceeding before it where the divorce was granted by the Scott District Court.

The trial court had announced as a part of the record in connection with appellants' motion for continuance, "* * * I think unless you are prepared to show that this father is unfit morally to have custody of his child, there being no provision in the divorce decree, the court is bound to award the custody of the child to him as the natural father."

Appellants argue the Polk Court was without jurisdiction to make any ruling as to custody in the adoption proceedings.

As a general rule a court granting a divorce to one of the parents of a minor child has a continuing jurisdiction to modify the decree with reference to the custody of the child, and the court retains jurisdiction to modify its decree in this respect at anytime during the minority of the child, even though such authority is not reserved in the decree and notwithstanding the fact that the original decree of the court fails to make any provision for the custody of the child. Nelson on Divorce and Annulment, Second Ed., Revised Volume 2, section 15.35; 27B C. J. S., Divorce, section 317(1); 24 Am. Jur.2d, Divorce and Separation,

section 812; Schraner v. Schraner (Fla. App. 1959), 110 So.2d 33, 36; State ex rel. Kleffman v. Bartholomew Circuit Court, 245 Ind. 539, 200 N.E.2d 878, 879.

An exception to this rule exists in the case of death of a party granted custody of a child by decree of divorce. We have held this fact terminates the jurisdiction of the court granting the divorce to make further determination as to custody of the child. Parks v. Parks, 257 Iowa 1029, 1033, 135 N.W.2d 625, 627.

If a court has granted a divorce without providing for the custody of a child of the parties, that court has inherent power to award custody after a divorce has been granted by a decree which makes no provision for custody. 24 Am. Jur.2d, supra, section 780; 27B C. J. S., supra, section 306.

As to the exclusive jurisdiction of the court granting a divorce and awarding child custody to change or modify such award, what has been designated as the general rule supported by the greater weight of authority is set out in an annotation appearing in 146 A. L. R. 1153, 1155. The same rule appears in 24 Am. Jur.2d, supra, section 776, where it is said:

"* * * (T)he rule in many states is that jurisdiction acquired by a court in divorce proceedings over the subject of the custody of a child of the parties is not only continuing but is also exclusive, and precludes any other courts in the same state or sovereignty from thereafter acquiring or exercising jurisdiction over the same subject, and all proceedings relating to the custody of such child or children must thereafter be brought in the same court in which the original decree affecting that subject was rendered." See also In re Crawford, 81 S. D. 331, 135 N.W.2d 140.

As applied to subsequent proceedings between divorced parents seeking to modify the decree, we agree with this rule except perhaps in criminal or juvenile court cases.

Of course an adoption does change the status of a child and may affect incidents of a divorce decree involving parental duties and privileges. But where the conditions and circumstances prescribed by chapter 600, Code, 1966, as warranting adoption are shown to exist, the fact the adoption may affect certain incidents of a divorce decree is not a bar to such adoption.

In re Adoption of Chinn, 238 Iowa 4, 9, 25 N.W.2d 735, 738. We do not intend to intimate by our holding here the fact that a child is under the jurisdiction of a court in divorce proceedings between his parents would prevent even another court from having jurisdiction of the same child for its adoption on the consent of the parent to whom custody has been given. But here the adoption was dismissed and no change in custody by reason of the granting of appellants' adoption was involved.

■ The question of custody was injected into the adoption hearing by Rex Ellis in the prayer of his resistance to appellants' petition when he asked that the adoption be dismissed and he be given custody, control and care of Dawn. We do not believe it can be said here that appellants voluntarily litigated that issue so as not to be in a position to raise the question on appeal as happened in In re Adoption of Karns, 236 Iowa 932, 939, 20 N.W.2d 474, 478.

■ Under the circumstances here the trial court was without jurisdiction to adjudicate custody in these proceedings.

IV. Appellants contend in another proposition Rex Ellis's consent was not necessary. The question of the necessity for the father's consent is controlled by section 600.3, Code, 1966. It provides in part: "The consent of both parties shall be given to such adoption unless * * * the parents are not married to each other, * * *. If not married to each other, the parent having the care and providing for the wants of the child may give consent."

■ It is clear that since the divorce appellee and his former wife have not been married to each other. We have held this statute permitting consent of one parent only to adoption if parents are "not married to each other" is not restricted to parents of illegitimate children and divorced parents are within it. In re Adoption of Karns, supra, 236 Iowa, at 935, 20 N.W.2d, at 476.

■ The word "care" is used in the statute in the sense of charge or oversight, implying responsibility for safety and prosperity. In re Adoption of Chinn, supra, 238 Iowa, at 8, 25 N.W.2d, at 737.

■ Velma's consent to the adoption by appellants was given at the time Dawn was placed in their home. Although Dawn was

only six days old, Velma had the care and provided for her wants. It is fair to assume she obtained the necessary medical and hospital services on her own credit. She was performing the legal duty of providing for Dawn's immediate maintenance and support. We believe under the circumstances she was the parent having the care and providing for the wants of the child.

When Velma placed Dawn with appellants, she was authorized by section 600.3 to consent to the adoption. Section 600.2 provides: "* * * No petition shall be granted until the child shall have lived for twelve months in the proposed home. * * *." Naturally Velma would not have been expected to provide for the wants of Dawn while in the proposed foster home.

As previously stated, the divorce decree made no award of Dawn nor did it provide Rex visitation rights, but required him to contribute $5 per week toward her support. He admitted on examination that he had not paid it, testifying "since I did not have any idea where the child was, I didn't pay the sum. I would have paid this amount if I had known."

"After our decisions in In re Adoption of Alley, 234 Iowa 931, 14 N.W.2d 742, In re Adoption of Karns, 236 Iowa 932, 20 N.W.2d 474, and In re Adoption of Chinn, 238 Iowa 4, 25 N.W.2d 735, all supra, the Fifty-second General Assembly, in 1947, overhauled and made a number of changes in our adoption statutes. The journals of that session show there was introduced an amendment to Code section 600.3 plainly designed to require consent of a divorced father to the adoption. The amendment was defeated. The Fifty-second General Assembly, chapter 281, section 4, amended section 600.4, however, to provide for *notice* of the adoption proceedings 'to a divorced parent not having custody of the child.'

"It is therefore plain the legislature did not intend to require *consent* of a divorced parent not having custody unless he is 'providing for the wants of the child' as stated in section 600.3." In re Adoption of Perkins, supra, 242 Iowa 1374, 1400, 49 N.W.2d 248, 262.

In a statement made a part of the record at the time of the hearing on the motion for new trial the court stated "* * * [I]

can find no testimony of abandonment but only the testimony that the child and its whereabouts was secreted everytime he tried to determine where the child was." We believe, like the trial court in In re Adoption of Alley, supra, 234 Iowa, at 936, 14 N.W.2d, at 745, the court's announcement "* * * is contrary to the language of [Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N.W. 401], wherein we point out that some of our decisions have recognized exceptions to the requirement of consent to the adoption by both parents *in addition to those mentioned in the statute,* where there has been 'conduct which amounts to an abandonment or to a waiver or forfeiture of custodial and other parental rights.' See also Seibert v. Seibert, 170 Iowa 561, 567, 153 N.W. 160."

 We hold under the facts here Rex's consent was not a necessary preliminary to appellants' maintaining an action for adoption of his child. In re Adoption of Cannon, 243 Iowa 828, 832, 53 N.W.2d 877, 880.

Nothing we have said here is contrary to our holding in Burrell v. Burrell, supra.

V. In view of our holding in Divisions III and IV, supra, it is unnecessary that we determine other propositions relied on by appellants.

This conclusion requires that the cause be reversed and remanded with instructions to further investigate and hear the matter of appellants' petition for adoption and make such decree as may then be proper. We are not called on to decide what the ultimate determination of the case should be and express no opinion on that question.

 The burden of proof is upon a petitioner in an adoption proceeding to establish the facts justifying the adoption. In re Adoption of Perkins, supra, 242 Iowa, at 1381, 1382, 49 N.W.2d, at 252, citing 2 C. J. S., Adoption of Children, section 39a.

The trial court shall prescribe the notice to be given Rex Ellis of this hearing and afford him an opportunity to resist the adoption.—Reversed and remanded.

All JUSTICES concur except THORNTON, J., not sitting.