SHINKONIS *v.* JOHNSTONE.

*In re* PETITION OF SHINKONIS.

1. PARENT AND CHILD—SURVIVOR'S CUSTODY OF CHILD.

In the absence of a showing that the surviving parent of a child is not a suitable person to have the custody of a child, such parent is legally entitled to the child's custody under the probate code (Act No. 288, chap. 3, § 6, Pub. Acts 1939).

2. SAME—CUSTODY OF CHILD—BEST INTEREST OF CHILD.

In determining who shall have custody of a minor child, the best interest of the child is of paramount importance and it is the judicial duty of a court to safeguard the child's welfare and care but the parent of the child may not be deprived of his custody except it be shown that the parent was an un-suitable person to have such custody (Act No. 288, chap. 3, § 6, Pub. Acts 1939).

3. ADOPTION—RIGHTS OF PARENTS—STATUTES.

The legal parent of an adopted child is entitled to all the rights of a parent under the probate code (Act No. 288, chap. 10, § 5, Pub. Acts 1939).

4. PARENT AND CHILD—CUSTODY OF CHILD BY NATURAL MOTHER AND ADOPTIVE FATHER.

Where it appears that an 8-year-old boy's natural mother and his adoptive father are sober, industrious people, have a good home and are able and willing to care for the boy, they are

entitled to his custody as against childless brother and sister-in-law of boy's deceased natural father who had taken care of him for a while notwithstanding that adoptive father had at one time appeared to have cared less for the boy than he did for his own children (Act No. 288, chap. 3, § 6, chap. 10, § 5, Pub. Acts 1939).

Appeal from Wayne; Chenot (James E.), J. Submitted June 12, 1945. (Docket No. 38, Calendar No. 42,964.) Decided October 8, 1945.

Petition by Frank Shinkonis for a writ of habeas corpus to inquire into the detention of Gerald Johnstone by Kenneth Johnstone and Dorothy Campbell Johnstone. Judgment for plaintiff. Defendant appeals. Reversed and remanded for entry of judgment dismissing petition.

*Louis J. Colombo* and *Anthony A. Vermeulen,* for petitioner.

*Payne & Payne* (*Everett D. Crowe,* of counsel), for defendants.

Sharpe, J. Defendants Kenneth Johnstone and wife appeal from a judgment in habeas corpus proceedings, granting plaintiffs Frank Shinkonis and wife the custody of Gerald Johnstone, the minor child of defendant Dorothy Campbell Johnstone.

The facts are that Gerald Johnstone was born out of wedlock to Dorothy Campbell on February 25, 1937. The boy's natural father is Peter Shinkonis, now deceased. The boy was born in the Marr Hospital, Detroit, and was later taken to Providence Hospital where he remained until he was 15 months old. He was then placed in various boarding homes. On December 3, 1938, his mother married Kenneth Johnstone and about February 20, 1939, he was

taken to their home where he lived until about December 26, 1942, with the exception of various times during which he lived at the home of Frank Shinkonis, a brother of Peter Shinkonis. In 1942, Kenneth Johnstone adopted Gerald by formal proceedings in the probate court of Wayne county. Gerald remained at the home of the Shinkonises from December 1942 until September 20, 1944, when he was removed and placed in the custody of the natural mother.

On September 21, 1944, Frank Shinkonis filed a petition for writ of habeas corpus upon the theory that he and his wife had lawful and legal custody of Gerald Johnstone, as defendants had on December 26, 1942, turned possession of Gerald over to petitioners with the understanding that the care and custody of Gerald should be left with petitioner and wife; and that Dorothy Campbell Johnstone is not a fit person to have the care, custody, and education of the minor child.

The cause came on for trial and the trial court made the following finding of facts:

"(1)   The court is fully convinced that Gerald will be well provided for and receive good care and affection from the Shinkonises, and that both the Shinkonises are entirely suitable to have the custody of this child.

"(2)   The court finds that Dorothy Campbell Johnstone, the natural mother, is devoted to Gerald and loves him as any mother would, and that she is an entirely suitable person to have his care and custody.

"(3)   The court finds that the Johnstone home, to which Gerald would be taken if returned to the Johnstones, is a suitable home and would be an entirely proper place, as far as surroundings and equipment are concerned, in which to bring up Gerald.

"(4) The court finds that Kenneth Johnstone, Gerald's foster father, does not have the proper fatherly feeling and affection for Gerald and is not a suitable person to have his custody.

"The factual situation in this case is different from any case which the court has found on the subject. The distinguishing feature lies in the fact that in the case at bar we have one natural parent found to be suitable in every respect by the court and a foster parent found to be unsuitable."

Defendants appeal and urge that the record does not sustain the trial court's findings that Kenneth Johnstone is an unsuitable person to have custody of Gerald; and claim that Dorothy Campbell Johnstone, being a suitable mother with a good home, is entitled to the custody of her son, even though the adoptive father may be unsuitable because of lack of parental love.

It appears that the Johnstone home is made up of Mr. and Mrs. Johnstone and their three children. They are buying their home, which is a five-room house. Mr. Johnstone is a machinist and has been employed at the Gar Wood Industries for the past three years and earns $70 per week. The Shinkonises are childless. They are buying their home. Mrs. Shinkonis owns an establishment for the sale of liquor which her husband manages. In January, 1944, petitioners instituted adoption proceedings in the probate court of Wayne county. Defendants consented to the adoption, but later repudiated their consent.

It also appears that Kenneth Johnstone is a sober, industrious, hardworking man, but has not the same amount of love and affection for Gerald that he has for his own children. He testified:

"I was not quite sure if I cared just as much for Gerald as I did for the rest of the children. I cared

a great deal for him before we had children of our own and then I thought there was a difference for a while.  Raising a child from a baby is much different than bringing a child into your home when it is two years old.  It was very difficult for me at first.  I was 32 years old, I believe, at the time I got married.  I never had a child of my own.  I never had very much to do with children.  I tried very hard, and I think I succeeded.  At the present time I have love and affection for this child.  It is more than I had when we first took him into our home.

"*Q.*  If there is a difference in your affection for your children, and this child, is it of such a nature that it would interfere with your duties towards this boy?

"*A.*  No.

"*Q.*  When did this love for this child that you now claim you have, first develop and manifest itself in your heart?

"*A.*  About seven or eight months ago.

"That would be about May or April of 1944.  Up to that time my feeling had been strong, but I did not know whether it was strong enough."

In *Liebert* v. *Derse,* 309 Mich. 495, we said:

"In the absence of a showing that he is not a suitable person to have the custody of the child, plaintiff, as the surviving parent, is legally entitled to his custody under the probate code, Act No. 288, chap. 3, § 6, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-3[6], Stat. Ann. 1943 Rev. § 27.3178 [206]), which provides in part:

"'The father or mother of the minor, and if 1 of them be deceased, *then the survivor thereof, being respectively competent to transact their own business, and otherwise suitable,* shall be entitled to the custody of the person of the minor and to the care of his education.'

"We recognize the long-established rule that the best interest of the child is of paramount impor-

tance, *Martin* v. *Benzie Circuit Judge,* 200 Mich. 549; *In re Gould,* 174 Mich. 663, and that it is our judicial duty to safeguard his welfare and care, *Bird* v. *Bird,* 308 Mich. 230. However, we never have interpreted such rule so as to deprive a parent of the custody of his or her child, unless it was shown that the parent was an unsuitable person to have such custody."

See, also, *Riemersma* v. *Riemersma,* 311 Mich. 452.

Kenneth Johnstone, as a legal parent of the adopted child, is entitled to all the rights of a parent under the probate code, Act No. 288, chap. 10, § 5, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-10 [5], Stat. Ann. 1943 Rev. § 27.3178 [545]).

In the case at bar it is clearly shown that Dorothy Campbell Johnstone, the natural mother, and Kenneth Johnstone, the adoptive father, are sober, industrious people. They have a good home and are able and willing to care for Gerald. Under the authority of the *Liebert* and *Riemersma Cases, supra,* and the probate code, the defendants are entitled to the care and custody of Gerald Johnstone. The former attitude of Kenneth Johnstone does not disturb such a finding of fact and law.

The judgment granting petitioners custody of Gerald Johnstone is reversed and the cause remanded for entry of judgment dismissing their petition. Defendants may recover costs.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.